# Macungie Savings Bank *versus* Hottenstein.

1. The rule that the vicious element in an usurious contract survives in all its transmutations, applies only to cases in which the obligor or promissor remains the same.

2. For several years H. had endorsed the notes of G.   There were various renewals of these notes, when finally the bank discounted the note of H., with B. as endorser, and surrendered to H. all the notes of G. endorsed by H.   On all these notes usurious interest was charged and taken.   In a suit against H., on his own notes, *Held*, that H. was not entitled to defalk the usurious interest paid on the notes of G.

March 5th 1879.   Before Sharswood, C. J, Mercur, Gordon, Woodward, Trunkey and Sterrett, JJ.   Paxson, J., absent.

Error to the Court of Common Pleas of *Lehigh county :*  Of January Term 1879, No. 171.

[Macungie Savings Bank v. Hottenstein.]

Assumpsit by the Macungie Savings Bank against Levi S. Hottenstein.

The facts are stated in the opinion of this court. The trial was before Albright, P. J. The verdict was for $1624.45. The instruction of the court to the jury to give credit to defendant for the excess of interest paid both by Grim and Hottenstein, was the error assigned by plaintiff, who took this writ.

*Edward Harvey* and *C. J. Erdman*, for plaintiff in error.—The giving and accepting of the Hottenstein note and the surrender of the Grim notes, were an extinguishment of the debt of Grim : 2 Powers on N. & B. 203 : Byles on Bills *307 ; Dennis v. Williams, 40 Ala. 633 ; Arnold v. Camp, 12 Johns. 409 ; Manuel v. Mississippi Railroad Co., 2 Barr 198 ; Slaymaker v. Gundacker's Ex'rs, 10 S. & R. 75 ; Hart v. Boller, 15 Id. 162. The debt of Grim being thus extinguished Hottenstein could not defalk the usury paid on the Grim notes : Bly v. Second National Bank of Titusville, 29 P. F. Smith 453.

*John Rupp* and *John D. Stiles*, for defendant in error.—As long as the original indebtedness, which is tainted with usury, exists, so long the taint of usury follows it. The original taint of usury attaches to all consecutive obligations or securities growing out of the original vicious transaction, and none of the descendant obligations, however remote, can be free from it if the descent can be traced. Neither the renewal of an old nor the substitution of a new security between the same parties, can efface the usury, nor a further security, nor a guaranty given subsequently by a stranger. The statute of usury could be very easily evaded, if a security of a third person, taken a few days or a few months after the loan in lieu of the borrower would be valid : Campbell v. Sloan, 12 P. F. Smith 481 ; Miller v. Irwin, 4 Norris 376 ; Power v. National Bank of Fair Haven, 35 Leg. Int., No. 19, p. 194 ; Overholt v. Bank of Mount Pleasant, 1 Norris 490 ; Kendig v. Linn, 27 Am. Law Reg. N. S. 64 ; Gardner v. Matteson, 26 Id. 680.

The giving of a new note, or new and further security, for an antecedent debt, is not a payment and extinguishment of that debt, but the presumption is, that it is taken as merely a collateral security for the original debt. Where a creditor takes from his debtor a note payable at a future day, on account of his claims, this can only be considered as a collateral security : Shaw & Leigh v. The First Associated Presbyterian Church, 3 Wright 226 ; Weakly v. Bell et al., 9 Watts 273 ; Bank of Pennsylvania v. Potius, 10 Id. 150 ; Seltzer v. Coleman, 8 Casey 493 ; Dougherty v. Hunter, 4 P. F. Smith 380 ; Stone v. Miller, 4 Harris 450 ; Byles on Bills *381 ; Hoar v. Clute, 15 Johns. 224 ; Bayard v. Shunk, 1 W. & S. 92 ; McIntyre v. Kennedy, 5 Casey 448.

[Macungie Savings Bank *v.* Hottenstein.]

Mr. Justice WOODWARD delivered the opinion of . the court, May 5th 1879.

·Four notes drawn by William Grim, one on the 16th of June 1870, and the others on different dates in the year 1872, were discounted by the Macungie Savings Bank.    They were renewed from time to time until January 1875.    Levi S. Hottenstein, the defendant, was the accommodation endorser of the four notes throughout the period during which they were renewed.    At the close of the year 1874, or in the beginning of 1875, negotiations were entered into by the parties which resulted in the discounting by the bank of a note for $2100 drawn by Hottenstein and endorsed by Henry Brobst.    The four notes of Grim were given up to Hottenstein, and are in his hands.    The new note was renewed at intervals until the 30th of April 1877, when the last of the series on which this suit was brought was given.    As part of the transaction, a mortgage by Grim to Hottenstein for $2100 was put in evidence.    Hottenstein testified, however, that he had no knowledge of its existence until the following summer.    He then took it and holds it now. Usurious interest had been demanded and received by the bank not only on the series of notes drawn by Hottenstein and endorsed by Brobst, but on the series of Grim's notes, which Hottenstein had endorsed.    The jury were instructed on the trial to give credit to the defendant for the excess of interest. paid both by Grim and Hottenstein.

Was the defendant entitled to allowance for the usurious interest Grim had paid ?    If the question had been submitted to the jury they could scarcely have failed to find that the. evidence made out a case of novation—the substitution of a new draft for an old one. The bank's claim against Grim was extinguished when his notes were surrendered to Hottenstein.    The new note could not have been received as a collateral security, for there was no surviving debt to secure.    The question of merger could not arise, for that takes place only where the debt is one, and the parties to the securities are identical: Jones *v.* Johnson, 3 W. & S. 276.    Throughout the opinion in Campbell *v.* Sloan, 12 P. F. Smith 481, care was taken to confine the rule that the vicious element in a usurious contract survives in all its transmutations to cases in which the obligor or promisor remains the same.    It was said that no payment by a changed form of security can be bona fide " by the same borrower to the same lender, even though it may be strengthened by the engagement of a new surety or guarantor."    As to all essential points involved in this controversy, the defendant stands in precisely the position in which Andrews stood in Bly *v.* The Second National Bank of Titusville, 29 P. F. Smith 453.    Andrews had been the accommodation endorser of a series of notes drawn by the Climax Mower and Reaper Company, in the discount and renewal of which the company had paid usurious interest to the bank.    In

[Macungie Savings Bank *v.* Hottenstein.]

the note in suit, drawn by Andrews and endorsed by Bly, a balance due by the company had been included. Judge TRUNKEY, then the president of the Common Pleas of Venango, said in entering the judgment: " On all the loans and discounts Andrews was an accommodation endorser, borrowed no money, paid no interest and has no right of action on account of illegal interest paid by the company." The judgment was affirmed upon Judge TRUNKEY'S opinion. Miller *v.* Irwin, 4 Norris 376, was sent back for a trial because the defendant's affidavits alleged that she had given the note sued upon in renewal of a note drawn by her deceased father, of whose estate she was executrix; that she had not assumed or intended to assume any personal liability; and that she was induced to sign the note by the distinct and positive assurance of the officers of the United Savings Bank, that she would be bound only as executrix. That case rested on its own facts. Nothing contained in it had relevancy to any principle decided in Bly *v.* The Bank of Titusville, and nothing in it has relevancy to any principle requiring determination here.

Judgment reversed, and *venire facias de novo* awarded.

